Christopher D. Kircher, Esq., Bar No. 11176
Email: cdk@kircherlawfirm.com
THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, 200
Henderson, Nevada 89052
Telephone: (702) 508-6788
Fax: (702) 297-6509

*Attorney for First Round Management, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, and TRISTAN CONNELLY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST ROUND MANAGEMENT, LLC<br><br>Defendant. | Case No.:  Case 2:26-cv-01322-RFB-EJY<br><br>**NON-PARTY FIRST ROUND MANAGEMENT, LLC'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL SUBPOENA COMPLIANCE** |

Defendant First Round Management, LLC ("FRM"), by and through its undersigned counsel, hereby opposes Plaintiffs' Motion to Compel Subpoena Compliance [ECF No. 1] (the "Motion").  This matter was transferred to this Court pursuant to Federal Rule of Civil Procedure 45(f), and relates to the following case pending before the Court, *Kajan Johnson, et al. v. Zuffa, LLC, et al.*, Case No. 2:21-cv-01189-RFP-BNW.

For the reasons set forth below, the Motion should be denied. Even the narrowed Requests 5 through 11 impose an enormous and disproportionate burden (financial and otherwise) on this small, non-party. FRM has acted in good faith throughout more than fifteen months of negotiations, but legitimate privacy, business and practical concerns have created an impasse on certain issues that does not justify coercive relief.

1

This Response is based upon the pleadings and papers on file in this action, the Points and Authorities set forth herein, and any argument the Court may permit.

DATED this 19th day of June, 2026.

THE KIRCHER LAW FIRM, PLLC


/s/ Christopher D. Kircher
Christopher D. Kircher, Esq., Bar No. 11176
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052

*Attorney for First Round Management, LLC*

THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
Telephone: (702) 508-6788

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

FRM is a prominent sports management agency based in Florida representing professional Mixed Martial Arts ("MMA") fighters competing inside and outside the Ultimate Fighting Championship ("UFC"), as well as other collegiate and professional athletes competing in other sports. It is not a party to this litigation.

On January 16, 2025, Plaintiffs served an extraordinarily broad and unduly burdensome Subpoena to Produce Documents, Information or Objects (the "Subpoena") containing twelve categories of requests. FRM served written objections on February 8, 2025. The parties then engaged in extensive, good-faith meet and confer discussions spanning more than a year. After the Court in August 2025 meaningfully limited an identical subpoena for documents to another non-party, Dominance MMA, LLC ("Dominance MMA"), for numerous reasons (most of which were similar to FRM's objections), Plaintiffs agreed to limit the Subpoena to focus on Document Requests 5-11 and offered other concessions. *See* Case No. 2:21-cv-01189, ECF No. 249.

Initially, FRM agreed to many of Plaintiffs' proposals, including use of a third-party vendor for collection of electronic information, Plaintiffs' payment of the collection costs, the identification of four custodians for collection, and establishment of a review platform allowing FRM to perform responsiveness and privilege review of search-term hits (once search terms are agreed-upon). Collection of emails from two custodians has occurred.  FRM produced a limited number of readily accessible exemplar documents in response to the Subpoena.

However, the parties reached an impasse in February 2026 when it became clear that the financial burden on FRM had not been adequately mitigated and devices—particularly FRM's CEO Malki Kawa's phone, which mixes business and personal communications—would expose sensitive personal information and unrelated business information to third-party reviewers.

Thus, FRM cannot simply turn over search-term hits. It must conduct a full linear, manual review of the collected materials to identify responsive, non-privileged documents and to protect confidential and personal information. That review will be extraordinarily expensive and time-consuming.  Without a full review, the risk of highly sensitive business, confidential and personal

THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
Telephone: (702) 508-6788

information completely irrelevant to the Subpoena or this case increases dramatically. Such disclosure will harm FRM and its agents' business.

Plaintiffs now seek an order against FRM compelling broad production of materials responsive to Document Request Nos. 5-11. That relief should be denied. The discovery is not proportional, the burden on this small, non-party is overwhelming, and the cost of review alone is unjustifiable. Much of the information Plaintiffs seek is more appropriately obtained from the other parties to the lawsuit, fighters, promoters, and sponsors who actually control the documents. Simply put, the Court should not force FRM to bear any further burden without first imposing meaningful limitations and requiring Plaintiffs to pay the substantial costs of review and production.

## II.    RELEVANT BACKGROUND

### A.   FRM Is a Sports Management Company and a Non-Party to the Underlying Lawsuit

FRM is a Florida-based company in the highly competitive sports management business. Declaration of M. Kawa, ¶ 2, attached hereto as **Exhibit 1**. FRM manages MMA fighters that not only compete in the UFC, but MMA fighters that compete for other promoters, as well as boxers, wrestlers and athletes in other sports, including professional football, basketball and soccer.  FRM also represents college football and basketball players.  *Id*.  While FRM represents high-profile fighters and athletes, FRM is correctly characterized as small company with approximately 3-5 employees at most. *Id*.  FRM engages a number of independent contractors as agents as well, who utilize their own mobile phones, laptops and other equipment which FRM does not purchase, provide or have possession or control.  *Id*.  FRM does not have an in-house legal department or IT department.  *Id*.

### B.  Plaintiffs Seek Expansive and Extremely Burdensome Discovery from FRM

Plaintiffs served the third-party Subpoena at issue on FRM.  It became immediately clear that the Subpoena on its face seeks broad, burdensome and costly discovery from FRM which is not proportional to the needs of the case.

On February 8, 2026, FRM sent a letter via email lodging its initial, valid objections and providing a limited response to the Subpoena.  FRM Letter to Plaintiffs' Attorneys, attached hereto

THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
Telephone: (702) 508-6788

4

THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
Telephone: (702) 508-6788

as **Exhibit 2**. FRM provided certain information in response to the Subpoena, including to: (1) Request No. 2 about FRM's ownership; (2) Request No. 3 about not maintaining a formal written policies or procedures for document retention, preservation or backup, or litigation holds; and (3) Request No. 10 about compensation from MMA promoters to its clients. FRM stated that it would "meet and confer in good faith to reach a reasonable accommodation that addresses Plaintiffs' discovery needs without imposing an undue burden, violating client privilege and confidentiality, or exposing First Round to liability. First Round strongly believes that much of the information Plaintiffs seek can be obtained directly from fighters, promoters, sponsors, or other relevant third parties, thereby minimizing unnecessary discovery demands and exposure of liability on First Round." *Id*.

Throughout the Spring and Summer of 2025, FRM's Florida legal counsel and Plaintiffs engaged in numerous "meet and confer" discussions and correspondence. FRM agreed that it would provide documents specifically related to the plaintiff, Kajan Johnson.

On or about September 5, 2025, Plaintiffs' counsel informed FRM's Florida counsel of the Court's ruling related to an ***identical*** subpoena to Dominance MMA (the "Dominance MMA Order") in Case No. 2:21-cv-01189. Kevin Rayhill Email to J Stern dated 9/5/25, attached hereto as **Exhibit 3**. While FRM is a very different company and has its own unique objections and concerns with the Subpoena, the Dominance MMA Order provided some insight to the parties.

The Dominance MMA Order confirmed what FRM had been telling Plaintiffs' counsel: the Subpoena is overly broad and unduly burdensome. *See* Transcript of Proceedings, 2:21-cv-01189, ECF No. 249. The Dominance MMA Order found Document Request Nos. 5-11 relevant and ordered Dominance MMA and Plaintiffs to meet and confer. Furthermore, the Court recognized and ordered that, because of the financial burden on Dominance MMA, expenses "above $10,000 you [Plaintiffs] have to pay for everything including review costs." *Id*. [ECF No. 249] at 27:5-22.

Thereafter, FRM's Florida counsel and Plaintiffs' counsel continued to communicate regarding the Subpoena. FRM produced to Plaintiffs stock contract exemplars because FRM utilized the identical contracts during the time period responsive to the Subpoena. J. Emails between Counsel dated 9/30/25 and 10/1/25, attached hereto as **Exhibit 4**. FRM continued to

emphasize the undue burden and cost. Furthermore, Plaintiffs requested that FRM pay a third-party vendor from $4,000 to $20,000 to gather and review electronic documents computers and mobile phones, which FRM would not agree to due to the unjustifiable financial burden, among other reasons.[1] Emails between Counsel dated 10/27/25, attached hereto as **Exhibit 5**.

Moreover, the issue of electronic documents and data gathered by the third-party vendor, narrowed by search terms, still containing entirely non-responsive, irrelevant material, remained a serious problems for FRM. Particularly, highly personal and business sensitive emails, documents and other communications entirely unrelated to the Subpoena would be produced and viewed by Plaintiffs and potentially others without a linear, eye-ball review.[2] This, of course, fell beyond FRM's response obligations.[3] FRM requested another meeting with Plaintiffs' counsel to discuss in January 2026. *Id*.

By February 2026, FRM and Plaintiffs had narrowed the custodians for email and mobile phone search to Malki Kawa (CEO of FRM), Malki "Primo" Kawa (COO), Ibrahim "Abe" Kawa (Director of MMA) and Min Yoon (Director of Operations) for collection. The collection requires:

- A full image of the mobile phones and preserving all text and messaging files, including images sent by text or messaging.

- Denying the custodians access to their mobile phones during the collection time.

- The custodians personal user names, passwords and two-factor authentication information.

- Staggering the collection times.

---

[1] FRM primarily utilizes G-mail and does not have internal company applications, software or related messaging or document storage.

[2] ECF No. 1-1, p. 236.

[3] Plaintiffs explained that the third-party vendor, Innovative, essentially collects the electronic documents, communications and data; the documents are uploaded to Everlaw to apply the search terms to narrow the production; and then it can be reviewed.

This was and is not a simple task for FRM, nor totally agreeable. Given the nature of the business, FRM's custodians are constantly travelling domestically and internationally, on their mobile phones and rarely have the ability to stay stationary without access to their mobile phones. Ex. 1, ¶ 5. Moreover, extracting the entire mobile phone, rather than a targeted extraction, caused unacceptable access to personal and extremely business sensitive information.[4] *Id*. at ¶¶ 10-12. The Protective Order in the underlying case cannot fully alleviate these concerns. Nonetheless, as a gesture of good faith, FRM proceeded with permitting the collection of Min Yoon and Ibrahim (Abe) Kawa's emails.[5]

Furthermore, FRM *again* raised legitimate concern and difficulties with Malki Kawa's data extraction because of the personal and other sports (non-MMA, non-UFC) information being extracted.[6] Given the likelihood for personal and extremely sensitive business information being disclosed without consent or responsive to the Subpoena, Mr. Kawa justifiably demanded that he personally be present during the extraction.

Plaintiffs clarified, and agreed, that FRM would have the ability to review the "search term hits" for additional filtering and what is filtered out (as non-responsive, privileged, etc.) would be destroyed by Innovative.[7] Plaintiffs, however, did not state that it would pay for the review of the "search term hits." *Id.*

**C. The Matter Is Transferred to This Court in Nevada**

On or about April 7, 2026, Plaintiffs moved to have the matter transferred to this Court from the United States District Court, Southern District of Florida, which is where FRM is located. The transfer was granted. Thereafter, FRM retained the undersigned Nevada counsel at an additional

---

[4] In the highly-competitive sports industry covered by the media and fans minute-by-minute, a disclosure of confidential information can have ramifications in a variety of ways.

[5] ECF No. 1-1, p. 263.

[6] ECF No. 1-1, p. 255.

[7] ECF No. 1-1, p. 257.

THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
Telephone: (702) 508-6788

7

THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
Telephone: (702) 508-6788

cost.  Declaration of Christohper D. Kircher, ¶ 2, attached hereto as **Exhibit 6**.  Per the Court's order, FRM's Nevada counsel attended the Status Check on March 18, 2026.

FRM's Nevada counsel has engaged in multiple written and oral communications with Plaintiffs' counsel to attempt to come to a mutually acceptable agreement related to the electronic discovery and shifting the burden from FRM to Plaintiffs.  *Id*. at ¶¶ 2-6. On May 27, 2026, counsel for Plaintiffs and FRM met and conferred via video-conference where numerous issues were raised. *Id*. Among other concerns, FRM reiterated the serious concerns with: (1) the  mobile phone extractions and review due to the personal, non-responsive and highly-sensitive business information contained on the  mobile phones; (2) the burden and cost related to responding to the Subpoena under Plaintiffs proposed terms, including shifting the cost-burden to Plaintiffs similar to the Court's ruling for Dominance MMA; and (3) narrowing the search terms.[8]  *Id*.; *see also* Emails between Counsel, attached hereto as **Exhibit 7**.  FRM was clear that upon agreeing upon search terms, extraction and narrowing of the electronic information utilizing the search terms, it intended to conduct a linear, manual review before responsive documents or information are produced to Plaintiffs for utilization in the underlying lawsuit.  *Id*.  Because of the anticipated high cost for a time-consuming review such as this[9], FRM sought to have Plaintiff to pay for the reasonable fees and costs incurred, which Plaintiffs' counsel had a willingness to do because of the Court's ruling in the Dominance MMA matter.

In a subsequent email response, however, Plaintiffs were unwilling to commit to assuming the significant burden to pay for a linear review.  *Id*. at 5/29/26 Email Exchange.  When pressed, Plaintiffs still would not commit to a linear review for privileged and responsive documents and communications, and did not commit to absorbing the expense for the review. *Id*.

---

[8]  FRM also identified that one custodian, Malki "Primo" Kawa, had not confirmed a willingness to provide his mobile phone for download and review for responsive documents. He utilizes his personal mobile phone.

[9] According to a court filing in Case No. 2:21-cv-01189 (ECF No. 555, p. 5), Dominance MMA has incurred more than $90,000 in attorney's fees and costs in connection with Plaintiffs' subpoena to review and produce documents and information.

On June 2, 2026, Plaintiffs clarified their position that FRM can conduct a linear review and that they have not said they "would not compensate FRM for significant expense incurred in complying with Plaintiffs' subpoena. But that does not mean writing a blank check." *Id*. At this point, the parties agreed to a briefing schedule as previously ordered by the Court because the issues had not been fully resolved.

In summary, FRM served timely objections, participated extensively in meet and confer conferences, agreed to custodians and Plaintiffs' third-party vendor for extraction, accepted Plaintiffs' offer to fund collection by the third-party vendor, and was prepared to conduct responsiveness review. The current impasse stems from a specific, good-faith disputes that arose during the practical implementation of mobile collection—not from intransigence or gamesmanship. FRM remains willing, upon agreeable terms, to produce responsive, non-privileged materials under appropriate parameters, including responsiveness review and allocating all costs to Plaintiffs.[10]

## III.    LEGAL STANDARD

The scope of discovery through a Rule 45 subpoena is the same as under Rule 26(b) and is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering, *inter alia*:

1.    The importance of the issues at stake in the action, the amount in controversy,

2.    The parties' relative access to relevant information, the parties' resources,

3.    The importance of the discovery in resolving the issues, and

4.    Whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

"The Committee Notes to the 2015 amendment to Rule 26(b)(1) emphasized the importance of proportionality and the objective of 'encourag[ing] judges to be more aggressive in identifying

---

[10] During the pendency of the Motion, FRM intends to continue to discuss in good faith the cost-shifting, search terms and permitting Innovative to collect the emails of the remaining 2 custodians, while reserving all rights.

THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
Telephone: (702) 508-6788

and discouraging overuse."' *Walsh v. Unforgettable Coatings, Inc.*, 2022 WL 3647920, at \*3 (D. Nev. Aug. 23, 2022) (citing Fed. R. Civ. P. 26(b)(1), Advisory Committee Notes (2015)). "This proportionality requirement is 'designed to avoid . . . sweeping discovery that is untethered to the claims and defenses in litigation.'" *Mfg. Automation & Software Sys., Inc. v. Hughes*, 2017 WL 5641120, at \*5 (C.D. Cal. Sept. 21, 2017); *see also Ashcraft v. Experian Info. Sols., Inc.*, 2018 WL 6171772, at \*1 (D. Nev. Nov. 26, 2018) ("At bottom, proportionality is a 'common-sense concept' that should be applied to establish reasonable limits on discovery.") (citation omitted). Pursuant to this requirement, courts limit discovery upon determining that "the discovery sought ... can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Importantly here, "nonparties subject to a subpoena duces tecum 'deserve extra protection from the courts.'" *Banneker Partners, LLC v. Milk Moovement, Inc.*, 2023 WL 3224444, at \*3 (E.D. Cal. May 3, 2023) (quoting *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995)); *see also* Fed. R. Civ. P. 45(d)(2)(B)(i) (protect against significant expense). Rule 45 also provides certain mandatory grounds for quashing or modifying a subpoena, including where the requests would "require[] disclosure of privileged or other protected matter," Fed. R. Civ. P. 45(d)(3)(A)(iii), ***and where the subpoena "subjects a person to undue burden,"*** Fed. R. Civ. P. 45(d)(3)(A)(iv). (Emphasis added).

An evaluation of undue burden requires the court to "weigh the burden to the subpoenaed party against the value of the information to the serving party," and to consider "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Casun Inv., A.G. v. Ponder*, 2019 WL 2358390, at \*5 (D. Nev. June 4, 2019) (internal quotation marks omitted).  Under these standards, the Court should deny the Motion.

## IV.    LEGAL ARGUMENT

### A.  Plaintiffs' Subpoena Was and Remains Overly Broad

The Subpoena's Request for Documents are textbook examples of facially overbroad requests that courts refuse to enforce. *Krause v. Nev. Mut. Ins. Co.*, 2014 WL 496936, at \*5-6 (D.

THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
Telephone: (702) 508-6788

THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
Telephone: (702) 508-6788

Nev. Feb. 6, 2014) ("A discovery request is overly broad and unduly burdensome on its face if it uses an omnibus term such as relating to, pertaining to, or concerning to modify a general category or broad range of documents or information."). Courts in this district have made clear that subpoenas that "request all documents" related to certain topics are overbroad and impermissibly vague. *See Casun Inv.*, 2019 WL 2358390, at *6 (holding that subpoena requests were "clearly overbroad" by requesting "all documents pertaining to or regarding in any way" nonparty entities and persons without any limitation to claims and defenses in the action); *see also Painters Joint Comm. v. Emp. Painters Trust Health & Welfare Fund*, No. 2:10-cv-01385, 2011 WL 4549232, at *2 (D. Nev. Sept. 28, 2011) (subpoena for "any and all documents" for a five-year period involving several different individuals and entities is overbroad).

Here, this Court found the identical Dominance MMA Subpoena overly broad, establishing that FRM's objections to the Subpoena have merit and are made in good faith.  In response, and consistent with the Court's Order in the Dominance MMA matter, Plaintiffs agreed to withdraw Document Requests 1-4 and 12, leaving Document Request Nos. 5-11 at issue here. This was a good start.  However, Document Requests Nos. 5-11 remain overly broad.

Plaintiffs continue to seek eleven (11) years of documents and communications, which extends beyond the proposed class in this case: July 1, 2017, to the present.  Moreover, Document Request Nos. 5-9 seek "all documents" or "all documents and communications" making them facially overly broad.  They are compound.  The extremely broad definitions and categories of documents continues for each Document Request:

**Document Request No. 5.**
All **Documents** and **Communications** constituting or relating to **Agreements** between **You** and **Your Clients** or between **You** or **Your Clients** and any **MMA Promoter** relating to **Your Clients'** provision of services as an **MMA Fighter** or for **Your Clients' Promotional and Ancillary Rights,** including, without limitation, all **Documents** and **Communications** discussing, evaluating, or analyzing actual or proposed contractual terms or provisions for use in **Agreements** between any **MMA Fighter** and any **MMA Promoter**, and including all **Documents** discussing or reflecting the financial, economic or competitive effects of such actual or potential **Agreements.**

THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
Telephone: (702) 508-6788

**Document Request No. 6.**

All **Documents** reflecting or relating to the administration, monitoring, auditing, or enforcement or threatened enforcement of any **UFC Fighter**'s **Agreements** with **Zuffa** and/or of any of the contractual provisions contained therein, including without limitation any threatened or instituted arbitration actions, lawsuits, or other legal proceedings.

**Document Request No. 7.**

All **Documents** relating to comparisons of the **UFC**'s **Promotional and Ancillary Agreements**, **Merchandising Agreements**, **MMA Bout Agreements**, side **Agreements,** marketing strategies, or broadcast and/or **PPV** distribution capabilities with the corresponding **Agreements,** marketing strategies or broadcast and/or **PPV** distribution capabilities of any other **MMA Promoter**.

**Document Request No. 8.**

All **Documents** and **Communications** constituting or relating to any actual or potential **Agreements** or other opportunity between **You** or **Your Clients** and any **Sponsor,** including without limitation any actual or potential approach, solicitation, negotiation, inquiry, proposal, regardless of whether such **Communication** resulted in an **Agreement,** or any **Documents** or **Communications** relating to any actual or potential such opportunity with a **Sponsor** that **Your Clients** were unable to benefit from as a result of any conduct on the part of the **UFC** or any **Agreement** (explicit or implicit) to which the **UFC** was or is a party.

**Document Request No. 9.**

All **Documents** referring or relating to the **UFC** denying permission to, or otherwise discouraging, **MMA Fighters** from contracting or working with particular **Sponsors,** banning or discouraging particular **Sponsors** from contracting with **MMA Fighters,** banning or discouraging **MMA Fighters** from contracting with **You,** or the **UFC** discussing and/or publicly proclaiming that **MMA Fighters** who contract with particular **Persons,** including, without limitation **MMA Promoters** or **Sponsors,** will either be fined, docked compensation, banned from the **UFC** or disadvantaged by the **UFC** in any way.

**Document Request No. 10.**

**Documents** sufficient to show all compensation paid to any of **Your Clients** by any **MMA Promoter,** including but not limited to that **MMA Fighter's** base salary, payment or compensation; bonuses of any kind; discretionary payments; signing bonuses; broadcast royalties; **PPV** shares; **Merchandise** payments; appearance fees; or any other compensation, broken down by date, **MMA Promoter,** amount of payment, and source of revenue.

**Document Request No. 11.**

**Documents** sufficient to show all income **Your Clients** or any other **MMA Fighter** received from any source other than a **MMA Promoter** since **Your Clients** or other **MMA Fighters** became a **Professional MMA Fighter,** including information

showing the amount **Your Clients** or other **MMA Fighters** received related to MMA; the source of that income; the service rendered or property, whether tangible or intangible, delivered in exchange for any payment; the date on which the payment was received; and, for recurring payments, the frequency of such payments.

For all these reasons, the Subpoena is overly broad, seeks irrelevant information and, as a result, is unduly burdensome.  The Court should protect FRM from this discovery.

### B. The Proposed Discovery Fails Every Proportionality Factor and the Burden on FRM Is Massive

#### 1.    The Parties' Resources vs. FRM's Limited Resources

This factor is dispositive. Plaintiffs are represented by well-resourced counsel pursuing a class action against large corporate defendants. The UFC parties (Zuffa, TKO, Endeavor) have substantial resources and in-house legal, compliance, and IT infrastructure. Based on FRM's understanding of this case, it currently does not dispute that this is a significant antitrust class action involving allegations of market power and depressed fighter compensation since 2017. While important, the issues do not automatically entitle Plaintiffs to shift massive discovery burdens onto small, non-party companies with no stake in the outcome. Courts routinely reject attempts to use non-party subpoenas as a substitute for targeted party discovery in complex litigation. *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) ("[W]hen an opposing party and a non-party both possess documents, the documents should be sought from the party to the case.").  The amount in controversy, while potentially large in a class context, does not outweigh the concrete, immediate, and enormous burden on FRM.

Furthermore, while large reputationally, FRM is a small management agency. It strategically operates with limited staff and resources. For example, Mr. Malki Kawa and the other custodians which Plaintiffs seek electronic discovery from, use personal devices that are not part of a centralized company system. Collection and review requires coordination with an external vendor, significant attorney or contract-reviewer time, and diversion of Mr. Kawa's and other key personnel's attention from their core business of representing and advising MMA fighters and other athletes outside the MMA world. Even with Plaintiffs covering vendor collection costs, FRM would still bear substantial internal costs for coordination, responsiveness review, privilege review,

THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
Telephone: (702) 508-6788

THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
Telephone: (702) 508-6788

logging, and potential follow-up disputes. FRM has already incurred legal expenses addressing the Subpoena and the instant Motion.

Indeed, this Court has recognized the resource disparity in the Dominance MMA matter by capping the non-party's initial financial responsibility at approximately $10,000 for an inventory and shifting all subsequent costs (including review and production) to Plaintiffs. The same imbalance exists here—only more acutely because of the mobile device and personal communications issues that have arisen and the fact that FRM manages professional and collegiate athletes that are not MMA fighters or compete in the UFC. The Court should shift the financial burden from FRM to Plaintiffs.

### 2.     *Plaintiffs and the UFC Parties Have Far Greater Access to the Relevant Information*

Plaintiffs and the UFC parties have far greater access to the vast majority of the requested information which appear to be, at the minimum, in the possession, custody, or control of the UFC parties. Plaintiffs' requests target agreements between FRM (or its clients) and MMA promoters, compensation paid by promoters to fighters, enforcement of fighter agreements with Zuffa, comparisons of UFC contracts to those of other promoters, sponsor deals, and related communications. The UFC is the counterparty to most fighter contracts (not FRM), sets compensation structures, enforces agreements, and controls broadcast and marketing strategies. Plaintiffs appear to be pursuing discovery from the UFC parties in these exact areas.

Requiring FRM—a non-party with no involvement in setting UFC policy or compensation—to recreate or produce this information is inefficient and duplicative. Rule 26(b)(2)(C)(i) expressly favors obtaining information from the party that already possesses it. Consequently, "[a] court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014) (citing *Rocky Mountain Medical Management,* 2013 WL 6446704, at *4 (D. Idaho Dec. 5, 2013)); *see also Precourt v. Fairbank Reconstruction Corp.,* 280 F.R.D. 462, 467 (D.S.D.2011) ("If the party seeking

THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
Telephone: (702) 508-6788

information can easily obtain the same information without burdening the non-party, the court will quash the subpoena."). This factor weighs heavily against compulsion.

### 3. The Burden and Expense Vastly Outweigh Any Likely Benefit

This is the core of the proportionality analysis, and it overwhelmingly favors denial or severe limitation of FRM's production obligations in this matter.

It cannot be emphasized enough that the financial burden on FRM is huge. Collection from multiple custodians' email accounts and mobile devices involves forensic processes that are time-consuming and disruptive. Mr. Kawa's mobile phone alone likely contains a substantial volume of mixed personal and business communications. Even with search terms to narrow the documents and a review platform, the resulting dataset is likely to be large. Responsiveness review, privilege review, confidentiality review (many documents and communications may involve athlete clients bound by confidentiality agreements), and preparation of a privilege log would require dozens or hundreds of hours of attorney and reviewer time. Courts routinely recognize this unjustified burden on a non-party. *See United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1982) ("Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party."). Plaintiffs' prior concessions (paying for collection and offering a review platform) are positive but do not eliminate these costs or risks. Moreover, Plaintiffs have waffled on paying the expense with the linear review of the documents and communications extracted, which partially led to Court intervention here.

FRM would also bear the practical burden of coordinating with custodians, addressing any technical issues, responding to inevitable follow-up questions or disputes over search terms or review methodology, and managing the risk that a production could inadvertently disclose sensitive or confidential personal or information. This diverts Mr. Kawa and other personnel from revenue-generating client work at a time when the agency must focus on the careers of its clients.

In the Dominance MMA Order, this Court imposed cost-shifting and preserved responsiveness review precisely because the burden on a small non-party was recognized as substantial. The same principles apply here with even greater force given the complications with

THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
Telephone: (702) 508-6788

the personal devices and FRM representing non-MMA athletes from other sports which, indisputably, are irrelevant to Plaintiffs' lawsuit.

Lastly, the likely benefit to Plaintiffs is marginal. They already have access to the primary sources of this information (the UFC parties). Forcing FRM to shoulder this enormous burden is unjustifiable given the cost and disruption.  At the minimum, Plaintiffs should bear the financial burden, not FRM.

### C. The Subpoena Seeks Highly Sensitive and Confidential Business and Personal Information, Some of Which FRM Lacks Custody or Control

The burden on FRM is not merely financial or logistical—it is profoundly business-sensitive, personal and privacy-invasive in ways that distinguish this Subpoena dispute from the similar (though different) matter involving Dominance MMA. In these situations, a court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter," Fed. R. Civ. P. 45(d)(3)(A)(iii), and a court may quash or modify a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i); *see also Hall CA-NV, LLC v. Ladera Dev., LLC*, 2019 WL 5448458, at *13 (D. Nev. Oct. 24, 2019) (modifying subpoena "such that the disclosure of privileged communications or protected work product is not required"), *aff'd*, 2020 WL 1033560 (D. Nev. Mar. 2, 2020).

#### 1.    *Personal Information*

The impasse that arose in February 2026 stems from the practical realities of collecting data from custodians' mobile devices, particularly the phone of FRM's CEO, Malki Kawa. These devices are not sterile corporate repositories. They are the primary tools through which FRM's personnel conduct business and live their personal lives. Forcing collection and review of this data without robust safeguards exposes non-responsive, highly sensitive personal information that has no conceivable relevance to Plaintiffs' claims against the UFC parties.

Further, mobile device collection carries unique and severe privacy risks that email collection does not. Modern smartphones can contain years of text messages, iMessage threads, photos, videos, location history, health data from fitness and medical applications, banking

THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
Telephone: (702) 508-6788

notifications, family group chats, and personal calendars. ***Again, none of this information can have any bearing on whether the UFC parties engaged in anticompetitive conduct or Plaintiffs' claims***. Additionally, the initial collection process—whether through forensic imaging, iCloud backups, or vendor extraction—often requires access to or review of broad swaths of device data before filtering can occur.

Search terms alone cannot reliably segregate personal from business communications on mixed-use devices. A term as common as a generic business-related word can easily capture family texts, health updates, or other purely personal exchanges. Only FRM personnel or the custodians themselves—who understand the context of their own communications—can responsibly perform the responsiveness screen to protect this information. Requiring FRM to allow broad third-party access to these devices without such a screen would impose a burden far beyond what Rule 45 contemplates for a non-party. Clearly, the privacy concerns that contributed to the impasses are real and legitimate.

Just as concerning, third-party reviewers would necessarily be exposed to this information during the responsiveness review stage that this Court has already recognized as necessary in the Dominance MMA matter. A protective order, while helpful for designated materials during the linear/eye-ball review process, does nothing to prevent that initial, unavoidable exposure during the review process itself.

As such, the risk of unnecessary and irreversible exposure of such intimate personal details is substantial and weighs heavily in the proportionality analysis under Rule 26(b)(1).

### 2. *Irrelevant, Non-Responsive Business Information*

As identified previously, FRM's situation differs materially from Dominance MMA's. Most critically, unlike Dominance MMA or other third-party MMA management companies that Plaintiffs have likely requested documents from, FRM manages the careers of professional athletes outside of MMA and UFC. FRM's mobile devices necessarily contain a substantial volume of highly sensitive, confidential communications relating to athlete management activities that fall outside the temporal and substantive scope of this UFC-focused case.

17

THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
Telephone: (702) 508-6788

Because FRM represents athletes in contexts that extend beyond UFC competition and MMA generally—including opportunities with other promotions, sponsorship arrangements, personal career planning, and non-MMA athletic or endorsement matters—the custodians' mobile phones and emails likely hold a materially higher proportion of non-responsive ***but deeply sensitive information***. This may increase the volume of material that must be reviewed for responsiveness and will increase the risk that purely personal or extraneous sensitive documents will be swept into the process.

In summary, the mobile device component does not merely add incremental burden: it transforms the discovery requests into one that threatens the business and personal privacy of non-party individuals in ways that are both unnecessary to resolve the claims in this case and disproportionate to the benefit Plaintiffs might obtain. These privacy considerations, combined with FRM's distinct client-management profile and the resulting non-responsive sensitive material on its custodians' devices, strongly counsel against the broad compulsion Plaintiffs seek. Any order requiring production must incorporate meaningful, practical protections for business and personal privacy—beginning with FRM-conducted responsiveness review of mobile data—rather than forcing exposure of intimate, irrelevant information simply because it resides on the same device as potentially relevant business communications related to the UFC parties over the previous 11 years. FRM and its custodians—non-parties to this litigation—justifiably demand such heightened protection.

### 3.    *FRM Does Not Possess Custody or Control Over Information the Subpoena Seeks*

Rule 45 requires that a subpoena be limited to documents within the recipient's "possession, custody, or control." It is well-established that "control" means more than mere access—it requires a legal right to obtain documents upon demand. *Allen v. Woodford*, 2007 WL 309945, *2 (E.D. Ca. Jan. 30, 2007).

Here, Plaintiffs' Subpoena seeks documents in which FRM lack custody or control, and is more appropriately directed to other parties or persons. Plaintiffs have no business demanding these documents from FRM. To start, Requests 5 and 8 seek agreements and related communications between FRM's clients and third-party promoters or sponsors—contracts to which

FRM is not a party and over which it has no ownership or independent right to disclose. FRM's mere possession of copies in its capacity as manager or agent does not give it legal custody or control for purposes of Rule 45. It cannot produce these materials without the consent of the actual contracting parties, and it has no authority to grant that consent on their behalf.

Further, these agreements may contain express confidentiality provisions and proprietary commercial terms. FRM owes fiduciary and agency duties to its clients to protect that confidentiality. Compelling FRM to turn over the documents would expose it to potential liability from its own clients. Rule 45 exists precisely to prevent this kind of overreach against a non-party.

There is an alternative. The information Plaintiffs want is directly available from the fighters, promoters, and sponsors who actually signed the agreements. There is no justification for dragging FRM into the middle of that discovery or for requiring it to violate confidentiality to make Plaintiffs' work simpler for them. The Court should deny the Motion as to these requests and direct Plaintiffs to obtain the documents from the parties who actually control them.

Lastly, Document Request Nos. 10 and 11 seek private financial records belonging to FRM's MMA clients. FRM generally does not receive or maintain records of fighter compensation, sponsorship payments, or other outside income. *See* Ex. 1, ¶ 8. Such information would be maintained by the MMA fighters themselves or their other representatives, and are not within FRM's legal control, as it cannot force its MMA clients to produce them, nor is it expressly authorized to do so unilaterally.

## V.   CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' Motion to Compel.

DATED this 19th day of June, 2026.

THE KIRCHER LAW FIRM, PLLC

*/s/ Christopher D. Kircher*

Christopher D. Kircher, Esq., Bar No. 11176
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052

*Attorney for First Round Management, LLC*

THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
Telephone: (702) 508-6788

19

THE KIRCHER LAW FIRM, PLLC
2831 St. Rose Parkway, Suite 200
Henderson, Nevada 89052
Telephone: (702) 508-6788

**CERTIFICATE OF SERVICE**

I am employed by the law firm of The Kircher Law Firm, PLLC in Clark County, Nevada. I am over the age of 18 and not a party to this action. The business address is 2831 St. Rose Parkway, Suite 200, Henderson, Nevada 89052.

I hereby certify that on the 19th day of June, 2026, I served the document, described as:

**NON-PARTY FIRST ROUND MANAGEMENT, LLC'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL SUBPOENA COMPLIANCE**

by sending   ☐ an original  ☒ a true copy

☒   a. via **CM/ECF System** to the following:

Michael J. Gayan
Claggett & Sykes Law Firm
1160 N. Town Center Drive, Suite 200
Las Vegas, Nevada 89144
mike@claggettlaw.com

T. Brent Jordan
Kevin E Rayhill
Joseph Saveri Law Firm, LLP
550 California Street, Suite 910
San Francisco, CA 94104
tbjordan@saverilawfirm.com

☐   b. **BY U.S. MAIL**. I deposited such envelope in the mail at Las Vegas, Nevada. The envelope(s) were mailed with postage thereon fully prepaid. I am readily familiar with The Kircher Law Firm, PLLC's practice of collection and processing correspondence for mailing. Under that practice, documents are deposited with the U.S. Postal Service on the same day stated in the proof of service, with postage fully prepaid at Las Vegas, Nevada in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date stated in this proof of service.

☐   c. **BY PERSONAL SERVICE.**

☐   d. **BY DIRECT EMAIL**.

☐   e. **BY FACSIMILE TRANSMISSION**.

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Christopher Kircher*
An Employee of Kircher Law Firm, PLLC