Kevin E. Rayhill (*Pro Hac Vice* pending)
T. Brent Jordan (*Pro Hac Vice* pending)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, CA 94104
Telephone: (415) 500-6800
Facsimile:  (415) 315-9940
krayhill@saverilawfirm.com
tbjordan@saverilawfirm.com

Michael J. Gayan (#11135)
**CLAGGETT & SYKES LAW FIRM**
1160 N. Town Center Drive, Suite 200
Las Vegas, Nevada 89144
Telephone: (702) 655-2346
Email: mike@claggettlaw.com

*Counsel for Plaintiffs Kajan Johnson and
Clarence Dollaway, and Tristan Connelly*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| KAJAN JOHNSON, CLARENCE DOLLAWAY, and TRISTAN CONNELLY, on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs,<br><br>   v.<br><br>FIRST ROUND MANAGEMENT, LLC,<br><br>             Defendant. | Case No.: 2:26-cv-01322-RFB-EJY<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER COMPELLING SUBPOENA COMPLIANCE** |

# TABLE OF CONTENTS

**Page**

I.      FRM'S REPEATED CLAIM THAT IT "ACTED IN GOOD FAITH" IS BELIED BY
        THE RECORD...................................................................................................................1

II.     FRM'S RESPONSE ATTEMPTS TO RELITIGATE OBJECTIONS ALREADY
        RULED UPON BY THE COURT IN THE IDENTICAL SUBPOENA ISSUED TO
        DOMINANCE. ................................................................................................................3

III.    FRM'S CONFIDENTIALITY OBJECTIONS HAVE NO MERIT. ...............................5

IV.     FRM'S COST-SHIFTING OBJECTIONS HAVE NO MERIT......................................7

V.      CONCLUSION.................................................................................................................8

On February 2, 2026, after months of protracted negotiations, First Round Management, LLC ("FRM") finally agreed to produce documents including emails and text messages from four custodians, including FRM CEO and founder Malki Kawa. Nine days later, on February 11, 2026, FRM abruptly changed course and refused to produce a single document from Malki Kawa on the basis that his phone contains documents so sensitive he would not even allow FRM's own employees to review them. *See* Declaration of T. Brent Jordan in Support of Plaintiffs' Motion to Compel ("Jordan Decl."), ECF No. 1–1, ¶ 41. To date, FRM has refused to produce a single document from either Malki or Primo Kawa (Director of MMA—MENA), and has not agreed to the collection of *any* custodian's phone. Plaintiffs had no alternative but to file their Motion to Compel.

FRM's Response to Plaintiffs' Motion to Compel Subpoena Compliance (ECF No. 24, the "Response") attempts to cast the dispute as a good-faith disagreement between the parties over overbreadth, burden, and expense. This is wrong. Plaintiffs filed their Motion to Compel because FRM refuses to produce its responsive documents, period.

FRM asks the Court to reconsider its prior findings regarding the relevance of Request Nos. 5–11 in Plaintiffs' subpoena and the relevant time period, both of which have already been approved by the Court in the context of the identical subpoena issued to Dominance MMA, LLC. *See* Minute Order, ECF No. 245; *see also* Transcript, August 28, 2025, ECF No. 249, at 5, 18–19. Plaintiffs respectfully seek an Order compelling FRM to produce documents responsive to Requests 5 through 11 of the Subpoena, which are identical to the Subpoena Requests that the Court has already found to be appropriate discovery of third parties in the underlying action.

## I.     FRM'S REPEATED CLAIM THAT IT "ACTED IN GOOD FAITH" IS BELIED BY THE RECORD.

Plaintiffs' Motion was necessary because FRM refused to allow collections from key custodians to occur. As detailed in the Motion and supporting papers, Plaintiffs served the subpoena on FRM on January 16, 2025, and demonstrated to FRM how, once collections were completed, search terms could be applied to FRM's ESI to return only responsive documents to be included in its production. Motion to Compel at 7, Jordan Decl., ¶¶ 5, 38. Communications between the parties over the ensuing months did not result in progress.

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER COMPELLING SUBPOENA COMPLIANCE

Plaintiffs made numerous concessions, including limiting the subpoena to Request Nos. 5–11 consistent with the Court's August 29, 2025, order relating to an identical subpoena to Dominance MMA, LLC ("Dominance"), and agreeing to cover the costs of collection and review of FRM's documents. *Id*., ¶¶ 7–8, 15, 19, 27–30, 32.

FRM was non-responsive to Plaintiffs' inquiries for five weeks after Plaintiffs' agreed to cover the cost of collections, then took a step backward by informing Plaintiffs that Mr. Kawa would not allow the collection of his documents until Plaintiffs answered his questions about how his personal and non-MMA-related communications would be handled. Plaintiffs agreed to address Mr. Kawa's concerns. Still, it took another ***two months*** of scheduling attempts before Mr. Kawa agreed to meet with Plaintiffs, and even then, Mr. Kawa failed to appear for the scheduled call on February 2, 2026. Plaintiffs nonetheless continued negotiating with FRM's in-house counsel Jacob Stern, reaching agreement on a set of four custodians, including Mr. Kawa, and other terms related to document collection. Jordan Decl., ¶¶ 24–38.

Nine days later, on February 11, 2026, Mr. Stern informed Plaintiffs that Mr. Kawa would not agree to the collection of his documents and communications, full stop. Then, with no explanation whatsoever, FRM shut down collections entirely and refused to have further discussions with Plaintiffs. Jordan Decl., ¶¶ 38–42. FRM reneged on its deal despite the concessions Plaintiffs had made, shut down collections over privacy concerns about personal materials contained on Mr. Kawa's phone, and refused to communicate further.

This is not good-faith negotiation.

Moreover, FRM's purported justifications for calling off the deal its counsel had made—the burden to Mr. Kawa of losing access to his phone while it is collected by the vendor, Response, ECF No. 24 at 7, and the "internal costs" of filtering collected materials for sensitive materials, *id*. at 13–14—were never articulated to Plaintiffs, and have only been articulated at this late date in the Response.

To date, none of the four agreed FRM custodians have produced their mobile devices for collection, and two of the four agreed FRM custodians have not allowed email collections. The Subpoena has been outstanding for seventeen months, and the Court's related Dominance ruling on

relevance, burden, and confidentiality has been known for nearly ten months. FRM has not operated in good faith.

Plaintiffs need an Order from this Court that commands Mr. Kawa to allow his phone to be collected. As Mr. Kawa makes clear in his Declaration, ECF No. 24–1, he does "not consent to Plaintiffs or anyone else reviewing" materials contained on his phone in "any manner," although he never disputes that the phone contains materials responsive to the Subpoena that remain uncollected. These materials are highly relevant to the litigation. Absent such an Order, Mr. Kawa's delay tactics will have prevailed, his choice to use the same device for both business and personal will have successfully obfuscated the discovery process, and either no responsive materials will be collected or, at best, an incomplete collection of UFC-related materials will occur, even though application of search terms will readily resolve the issues, and Plaintiffs have made repeated assurances that materials that do not hit upon search terms will not be utilized and will be discarded before the production is complete. Jordan Decl. at 228 (Exh. 18).[1]

## II. FRM'S RESPONSE ATTEMPTS TO RELITIGATE OBJECTIONS ALREADY RULED UPON BY THE COURT IN THE IDENTICAL SUBPOENA ISSUED TO DOMINANCE.

First, FRM argues that Plaintiffs seek the discovery "to shift" their discovery burdens "as a substitute" for targeted party discovery. Response, ECF No. 24 at 13. Next, FRM argues that the Subpoena is "overly broad" and "seeks irrelevant information." *Id*. FRM also maintains that the Subpoena seeks "eleven (11) years of documents and communications" that extend "beyond the proposed class in this case." *Id*. at 11. Finally, FRM argues that Plaintiffs seek information which is "in the possession, custody, or control of the UFC parties." *Id*. at 13. In sum, FRM argues that the Court should deny the Motion in its entirety and "should protect FRM from this discovery." *Id*.

---

[1] This is not an idle concern. As the Court is aware, Plaintiffs have good reason to believe that Defendants in the underlying action have spoliated evidence, especially including text messages that were sent from Defendants' executives' phones that were not disclosed or produced, or were sent in an ephemeral format that would self-erase after a short period of time. This includes texts that were sent to third parties such as FRM. The obstinate resistance of third parties, including FRM, to timely produce these texts is having a substantial negative impact on the Court's ability to adjudicate spoliation claims in the underlying litigation.

The relevance and proportionality arguments advanced by FRM overlap those made by Dominance. *See Johnson v. Zuffa, LLC, et al.*, 21-cv-01189 ("*Johnson*"), ECF No. 226 at 15 (Dominance argued that the Subpoena "seeks information that is irrelevant and inherently burdensome") and 16 (Dominance argued that the Subpoena "demands information of minimal relevance while imposing substantial burden"). These arguments have already been rejected by the Court. The Court found the Subpoena's requests highly relevant to the antitrust analysis the Court must undertake. *Id*. ECF No. 245; *see also* ECF No. 249 (Tr.) at 4, 18, 19 and 23–26.

The Relevant Time Period for responsive documents in Plaintiffs' Subpoena—January 1, 2015, until the present—is tailored to the needs of the case. This period was chosen to cover the Class Period in the Amended Complaint (July 1, 2017, "until the illicit scheme alleged herein ceases") plus the previous two and a half years to provide a fully developed factual record. The *Johnson* action brings the same claims as the previously filed *Le* action, but the relevant period for document production in *Le* ended on June 30, 2015. *See Le* Minutes of Proceedings, Case No. 5-cv-01045, ECF No. 200, Nov. 18, 2015. If the time period covered by the Subpoena matched only the *Johnson* Class Period, there would be a two-year gap in the discovery record. The UFC's contracts can last for several years, so contracts signed before the *Johnson* Class Period would affect compensation paid during the Class Period. Contracts which predate July 1, 2017, would also set the baseline from which diminished compensation during the *Johnson* Class Period would be calculated. Courts routinely approve discovery that pre-dates the class period, including the *Le* Court, which approved discovery going back to 2005 (and in some instances back to 2000) for a class period starting in December 2010. *Id*.[2] Dominance raised an identical objection to the scope of this Subpoena, *see Johnson*, 21-cv-01189, ECF No. 226 at 15, and the Court rejected Dominance's arguments. *Id.* ECF No. 245.

---

[2] *See also*, *In re Dockers Roundtrip Airfare Promotion Sales Practices Litig*., No. CV 09-2847 CAS (FMOx), 2010 WL 11515318, at *5 (C.D. Cal. Aug. 1, 2010) ("In general, courts allow discovery to extend to events before and after the period of actual liability so as to provide context."). Indeed, in some instances the *Le* Court authorized discovery to extend even further—to *10 years* beyond the beginning of the class period. *Le* Minutes of Proceedings, Case No. 5-cv-01045, ECF No. 214, Jan. 28, 2016 (ordering Zuffa to "use a reasonable methodology to respond to [certain] requests dating back to 1/01/2000").

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER COMPELLING SUBPOENA COMPLIANCE

FRM's argument that Plaintiffs should seek the information elsewhere is another argument raised by Dominance, *Johnson* ECF No. 226 at 16–18, and rejected by the Court. ECF No. 245; *see also* ECF No. 249 (Tr.) at 23. Like Dominance, FRM is a management agency that represents professional MMA fighters, many of whom fight for the UFC or other MMA promoters, and FRM will possess documents that are not available from other sources. Moreover, as the Court is aware, many of the communications between FRM and the UFC may be unavailable due to the risk of spoliation. *See* ECF No. 249, at 11 ("It's not accurate that whatever you're requesting they're going to get from the UFC.").[3]

The Subpoena's Requests have been narrowed in negotiations to only include Requests 5 through 11, consistent with the Court's Dominance ruling as to relevance and scope. As such, the tailored requests are not overly broad. FRM itself has acknowledged that the discovery requested is appropriate, by allowing full email collections from custodians Abe Kawa and Min Yoon in February 2026, consistent with its earlier position that it was "fully on board to produce the documents, communications, and other materials responsive to the requests." ECF No. 24–5. The Court should not tolerate FRM's attempt to backtrack.

## III.    FRM'S CONFIDENTIALITY OBJECTIONS HAVE NO MERIT.

FRM concedes that the Protective Order in this matter will be "helpful" in allowing it to designate materials as confidential.  Response, ECF No. 24 at 17. But FRM complains of the "unavoidable exposure during the review process itself" of personal communications and "intimate personal details" and matters relating to non-UFC "athlete management activities" mixed in with business matters on devices FRM uses both for UFC-related representation but also other purposes. *Id*.

Rule 45 provides for withholding privileged and attorney work product materials, Fed. R. Civ. P. 45(e)(2), not for withholding personal communications mixed together with business

---

[3] *See Johnson v. Zuffa*, No. 2:21-cv-1189-RFB-BNW (D. Nev.), ECF No. 353, Status Conference Transcript, Jan. 6, 2026, at 5:2-7 ("I do find there's sufficient indicia here of spoliation as it relates to relevant evidence. The Court finds that there are years of missing digital messages by [UFC CEO] Mr. White and [UFC VP Athlete Compliance] Ms. Long and others related to relevant contract negotiations which are relevant to the discovery here . . . .").

communications on singular devices. FRM and its custodians chose and the company sanctioned the use of the same devices for both work and personal matters. Plaintiffs have offered search terms that should resolve the issue and focus efforts on UFC-related ESI. Documents related to aspects of FRM's business that do not relate to the MMA industry will not hit on search terms and will not be produced *or reviewed*. An iterative process that refines the search terms using hit reports can limit the responsive documents to those that are truly relevant. At minimum, the search terms will resolve the issue enough so that expensive linear review is not warranted.

Linear review to weed out personal matters that hit upon agreed search terms in devices that combine work and personal communications is not the type of review contemplated by Rule 45(d)(2)(B)(ii), and the expense or burden of such an unnecessary linear review is certainly not a barrier to legitimate Rule 45 discovery. If that were the law, then businesspersons could simply use a single device for business related and personal matters, then successfully resist discovery by objecting to invasion of privacy. Nothing on a device that combined business and personal matters would ever be discoverable, and the Court's truth-seeking objectives would be wholly thwarted. If the cost of sorting through personal and work matters out of an abundance of caution that search terms did not go far enough created an insurmountable burden, Rule 45 would be rendered impotent and an artificial shield to legitimate discovery, created simply by a company choosing to conduct business on devices that also contain personal items.

FRM also raises the objection that it cannot produce responsive documents because many agreements contain express confidentiality provisions and FRM owes fiduciary and agency duties to its clients to protect that confidentiality, and to "turn over" the documents "would expose it to potential liability." Response, ECF No. 24 at 19. FRM suggests that the Court direct Plaintiffs to seek the information elsewhere, from "the fighters, promoters, and sponsors." Response, ECF No. 24 at 19. Again, the Court was presented with an identical objection in the Dominance matter, *Johnson* ECF No. 226 at 19–20 (Dominance argued that it did not have legal custody or control over certain documents and would be exposed to liability for disclosing them without express consent). The Court ruled in Plaintiffs' favor because the Protective Order in the case granted sufficient protection

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER COMPELLING SUBPOENA COMPLIANCE

under the circumstances. *Id*. ECF No. 245. Here, too, the Protective Order is sufficient, and FRM's arguments are ill-founded.

## IV.    FRM'S COST-SHIFTING OBJECTIONS HAVE NO MERIT.

FRM argues that Plaintiffs' Subpoena seeks discovery that is not proportional because Plaintiffs are "well-resourced" while FRM is not. Response, ECF No. 24 at 13. First, Plaintiffs already agreed in October 2025 to cover the full cost of collection with the document vendor, Innovative. Plaintiffs additionally agreed in February 2026 to cover the full cost of hosting services at Innovative when FRM would gain access to perform filtering review – a procedural step requested by FRM in negotiations between counsel and FRM, at Mr. Kawa's request.

Plaintiffs accept that beyond an initial threshold cost-shifting may be appropriate, and accordingly, have made concessions to FRM that should streamline the process of collection and review to keep costs down on all sides, including most importantly, the application of search terms to collected materials. The point of search terms is to minimize or obviate relevancy review. *Matter of Nomura Asset Acceptance Corp.*, 2018 N.Y. Slip. Op. (1/29/2018) (further subjective relevance and responsiveness determinations "are generally inappropriate" after application of agreed search terms); *McNeil v. Community Probation Services, LLC*, 2019 WL 5957004 at *4 (M.D. Tenn. Oct. 29, 2019) (rejecting claim that "will have to review all (approximately) 60,000 emails and attachments for relevance and privilege" as emails "were selected by applying the proposed search terms. They are presumptively responsive and relevant – that is the purpose of search terms.").

Plaintiffs are, however, reluctant to pay unnecessary costs. This includes attorney time spent in unnecessary linear review ***unrelated to compliance*** – rather, seemingly motivated by Mr. Kawa's desire to avoid embarrassment from even the possibility of search terms not working perfectly to segregate the business and personal. It would be additionally unjust to shift such extraordinary review costs to Plaintiffs when the complications arise from FRM's own voluntary choice to allow custodians to merge personal and work-related matters on the same devices.

Finally, Plaintiffs are reluctant to pay the costs of efforts to resist discovery. Undoubtedly, considerable such time is present here, most recently, in crafting FRM's Response, which argues that

the Court should deny the discovery in its entirety. Plaintiffs cannot agree to a blank check and must reserve rights to object to unnecessary costs unrelated to compliance.

## V.    CONCLUSION

As demonstrated above, FRM's Response fails to provide any justification for denying Plaintiffs' Motion to Compel. Plaintiffs respectfully request that the Court order FRM to produce documents and communications responsive to Plaintiffs' subpoena Request Nos. 5-11.

Dated: June 24, 2026                                Respectfully submitted,

                                                    /s/ Kevin E. Rayhill
                                                        Kevin E. Rayhill

                                                    Kevin E. Rayhill (*pro hac vice* pending)
                                                    T. Brent Jordan (*pro hac vice* pending*)*
                                                    **SAVERI LAW FIRM, LLP**
                                                    550 California Street, Suite 910
                                                    San Francisco, California 94104
                                                    Telephone:(415) 500-6800
                                                    Facsimile: (415) 395-9940
                                                    krayhill@saverilawfirm.com
                                                    tbjordan@saverilawfirm.com

                                                    Michael J. Gayan (#11135)
                                                    **CLAGGETT & SYKES LAW FIRM**
                                                    1160 N. Town Center Drive, Suite 200
                                                    Las Vegas, Nevada 89144
                                                    Telephone: (702) 655-2346
                                                    Email: mike@claggettlaw.com

                                                    *Counsel for Plaintiffs Kajan Johnson and*
                                                    *Clarence Dollaway, and Tristan Connelly*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER COMPELLING SUBPOENA COMPLIANCE** was filed with this Court using its CM/ECF service, which will send notification of such filing to all counsel of record this 24th day of June, 2026.

/s/ Kevin E. Rayhill
Kevin E. Rayhill